FILED & ENTERED

JUL 10 2015

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bolte    DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

| | |
|---|---|
| In re:<br><br>Tony L Phan<br>Jenny Nguyen<br><br>　　　　　　　　　　　Debtor(s).<br><br>Thu Nguyen, Truc Phan<br><br>　　　　　　　　　　　Plaintiff(s),<br><br>　v.<br><br>Jenny Nguyen, Tony Lee Phan<br><br>　　　　　　　　　　　Defendant(s). | CHAPTER 7<br><br>Case No.:  8:12-bk-16820-MW<br>Adv. No.:  8:12-ap-01334-MW<br><br><br><br>**MEMORANDUM DECISION AND ORDER**<br><br><br>Date of Trial: June 30, 2015<br>Time:　　　　9:00 a.m.<br>Courtroom:　6C |

Justin Sterling, Esq. for Plaintiffs and David Tang, Esq. for Defendants

**WALLACE, J.**

This adversary proceeding came on for a bifurcated trial on June 30, 2015 to determine whether a debt owed to plaintiffs Truc Phan and Thu Nguyen ("Plaintiffs") by defendant-debtors Tony Lee Phan and Jenny Nguyen ("Defendants") is excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A).  The sole issue before the Court at this first phase of the bifurcated trial is whether the doctrine of issue preclusion applies and bars the Defendants from re-litigating a default judgment

entered against them by the Orange County Superior Court.

The Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334 and General Order 13-05, filed July 1, 2013, of the United States District Court for the Central District of California. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

On the record, in response to the Court's inquiry, each of the parties expressly consented to this Court's final determination of this case under the rule of *Stern v. Marshall*, 564 U.S. __, 131 S.Ct. 2594 (2011) and *Wellness International Network, Ltd. v. Sharif*, __ U.S. __, 135 S.Ct. 1932 (2015).

## FINDINGS OF FACT

**A. Acquisition of the Property and the First State Court Action.**

Plaintiffs joined with Defendants in or about July 2000 to acquire real property located at 11693 Garden Grove Boulevard, Garden Grove, California 92843 (the "Property") on a 50/50 basis. Title to the Property was held solely in Defendants' names. A dispute erupted when Plaintiffs demanded that their names be added to the title. Plaintiffs filed a complaint against Defendants in Orange County Superior Court on July 26, 2007 (the "First State Court Action") and recorded a *lis pendens* with respect to the Property on August 3, 2007.

The First State Court Action was settled in open court on January 28, 2009. Under the terms of the settlement, the Defendants agreed that the Plaintiffs had a 50 percent interest in the Property and agreed to pay Plaintiffs 50 percent of the Property's net value (appraised value less costs of sale, prorated property taxes and the existing first mortgage). Defendants were to fund the buyout out of their own financial resources or from the proceeds of a refinancing of the Property.

**B. The Second State Court Action: Allegations and Causes of Action.**

The settlement did not finally end the matter because terms of the settlement were not performed by Defendants. Approximately one year and four months after the settlement was concluded, on or about May 14, 2010, Plaintiffs filed a First Amended Complaint against Defendants in Orange County Superior Court, Case Number 30-2009-00323196 (the "Second State Court Action").[1] Plaintiffs

---

[1] The original complaint appears to have been filed on November 24, 2009.

alleged in the Second State Court Action that Defendants had intentionally concealed from them during the settlement negotiations their placement of a second mortgage in the amount of $150,000 on the Property in December 2007 (the lender was Wells Fargo Bank). Plaintiffs further alleged that they did not discover the second mortgage's existence until almost three months after the settlement, on April 20, 2009.

The First Amended Complaint in the Second State Court Action, Doc 11-3, filed September 25, 2012 (the "First Amended Complaint") states seven causes of action against Defendants: (1) intentional misrepresentation, (2) negligent misrepresentation, (3) conversion, (4) declaratory judgment, (5) equitable lien, (6) constructive trust, and (7) quiet title. Significantly, Plaintiffs chose not to seek relief in the First Amended Complaint with respect to Defendants' breach of the settlement agreement. No portion of the First Amended Complaint states a cause of action for breach of contract.

**1. Cause of Action for Intentional Misrepresentation.**

In their first cause of action for intentional misrepresentation, Plaintiffs alleged each of the elements of fraud under California law: (1) Defendants deliberately failed to disclose the existence of the second mortgage in connection with the negotiation of the settlement agreement and continuously represented that there was only one mortgage on the Property; (2) the representation related to a material fact; (3) the Defendants knew their representation was false; (4) the Defendants made the representation with the intent to deceive and to induce reliance by the Plaintiffs; (5) the Plaintiffs were unaware that the representation was false and in fact justifiably relied upon it; (6) Plaintiffs suffered resulting damage from their reliance upon Defendants' false representation; and (7) Plaintiffs' reliance on Defendants' representation was a substantial factor in causing harm to Plaintiffs.[2]

Plaintiffs sought damages for "out-of-pocket expenses, actual damages, and other loss. . ." with respect to their first cause of action. First Amended Complaint at page 8 of 15, lines 20-22.

**2. Cause of Action for Negligent Misrepresentation.**

The second cause of action for negligent representation is an exact carbon copy of the first cause of action except for its title. Notwithstanding the title of <u>negligent</u> misrepresentation (underscoring added), the second cause of action has precisely the same allegations as the first cause of

---

[2] *Manderville v. PCG&S Group*, 146 Cal. App. 4th 1486, 1498 (2007).

Case 8:12-ap-01334-MW    Doc 64    Filed 07/10/15    Entered 07/10/15 13:55:23    Desc
Main Document    Page 4 of 17

action, as if the typist had simply used the computer to supercopy all the allegations in the first cause of action and then inserted them under the heading "SECOND CAUSE OF ACTION (Negligent Misrepresentation)" without changing a single word. Thus, although the second cause of action is labeled "negligent misrepresentation," there is no negligence pleaded and the second cause of action is simply a repetition of the first cause of action for intentional misrepresentation with an incorrect label.

### 3. Cause of Action for Conversion.

The third cause of action is for conversion. It is this cause of action that Defendants rely upon most heavily for their contention that issue preclusion does not apply in this case. In the cause of action for conversion, Plaintiffs alleged that the second mortgage demonstrated a wrongful exercise of dominion and control by Defendants over Plaintiffs' interest in the Property because Defendants had effectively seized possession of Plaintiffs' interest in the Property since December 3, 2007. Plaintiffs also contended that the second mortgage continuously prevented them from having access to their Property interest, as they could not proceed with a sale under the settlement agreement due to a potential foreclosure action from the second mortgage and that upon completion of any foreclosure sale, the Plaintiffs' 50% Property interest would be significantly reduced in order to pay off the second mortgage. First Amended Complaint at 9 - 10 of 15.

Although using somewhat different language, Plaintiffs' cause of action for conversion sought damages very similar to those sought under the first cause of action. As will be seen later, the identity or near identity of damages under the first and third causes of action complicates the inquiry into the basis for the judgment issued by the Orange County Superior Court in the Second State Court Action.

### 4. Other Causes of Action.

In the additional causes of action stated in the First Amended Complaint, Plaintiffs sought a declaratory judgment that the Property be sold and Plaintiffs awarded a 50 percent interest therein exclusive of the second mortgage, that an equitable lien be impressed on the Property, that a constructive trust be placed upon the Property, and that title to the Property be quieted in Plaintiffs' favor with respect to their 50 percent undivided interest in the Property. First Amended Complaint at pages 9-14 of 15.

**C. The Second State Court Action: Default and Default Judgment.**

Defendants failed to timely answer the First Amended Complaint, and their default was entered. Plaintiffs filed a Request for Court Judgment (the "Request for Judgment") on or about June 14, 2011.[3] Plaintiffs sought damages of $171,813 on the first page of the Request for Judgment, consisting of $122,238 in special damages, $6,120 in interest, $455 in costs, and $43,000 in attorney fees. On the third page of the Request for Judgment, the Plaintiffs itemized their damages as follows (and came up with a number differing from the number on the first page by $455.48 – roughly the amount of costs, with the 48 cent difference likely attributable to rounding): "Damages from Defendants' Fraud" of $76,500.00, $5,347.80 for "Homeowners Association Payments", $43,000.00 in "Attorney Fees", "Interest on Plaintiffs' Proceeds Share" of $6,120.00, and "Total Mortgage Payments" of $40,389.72. The fourth page of the Request for Judgment supplies added detail with respect to the "Total Mortgage Payments."

Also attached to the Request for Judgment are three declarations and one pseudo-declaration. The three declarations are: (1) Declaration of Truc Phan; (2) Declaration of Thu Nguyen; and (3) Declaration of Phu Do Nguyen Regarding Prejudgment Interest. The pseudo-declaration, entitled Declaration in Support of Plaintiffs Truc Phan and Thu Nguyen's Application for Default Judgment By Court, is not really a declaration at all but instead a document authored by Plaintiffs' attorney Justin Sterling that lays out the case for awarding $171,357.52 in damages for intentional and negligent misrepresentation, $171,357.52 for conversion based upon Defendants' interference with Plaintiffs' 50 percent interest in the Property (interference that occurred because a secret second mortgage had been placed on the Property by Defendants) and for quieting title with respect to the Property.

The Declarations of Truc Phan and Thu Nguyen explain that Plaintiffs had to make all the monthly payments on the first mortgage to prevent the Property from being foreclosed and, additionally,

---

[3] The copy of the Request for Judgment produced at trial is likely incomplete. It appears to lack several exhibits and has attached to it one document that clearly was not in the original, namely, a notice of motion and proof of service, dated September 28, 2012, in this adversary proceeding. The Court ruled that document should be admitted but treated cautiously in view of these omissions and permitted the parties to make arguments based on the document. Defendants' counsel did not object to this. Transcript of Hearing on June 30, 2015 ("R.T.") at 41-42. And, indeed, Defendants' counsel made arguments at closing based upon the Request for Judgment. R.T. at 45, lines 19-23 (reference to "default package"); R.T. at 51, lines 4-5.

-5-

made all the homeowners' association assessment payments.

The Orange County Superior Court entered a Judgment by Default against Defendants on July 8, 2011 (the "Judgment"). Unquestionably, the Judgment makes no express findings as to the cause or causes of action on which damages were awarded. However, it is clear that Plaintiffs' Request for Judgment was not simply rubber-stamped by the Orange County Superior Court. Instead of awarding $43,000 in attorneys' fees as requested by Plaintiffs, the Orange County Superior Court trimmed the award to $3,772.38 by striking out $43,000 (by drawing a line through the number) and handwriting in $3,772.38. Similarly, the request for special damages of $122,238 was trimmed by 43 cents to $122,237.57. Costs were clarified to be $455.00 instead of $455. This resulted in a total judgment of $132,584.90 (which is also handwritten in by the Orange County Superior Court, with $171,813 being stricken by drawing a line through it).

The Judgment gave no relief to Plaintiffs with respect to their causes of action for declaratory judgment, equitable lien or constructive trust. However, title to the Property was quieted in favor of Plaintiffs.

**D. The Nondischargeability Proceeding.**

Plaintiffs executed on the Judgment by garnishing Defendants' wages. Defendants then filed a joint bankruptcy petition under Chapter 7 of the Bankruptcy Code on May 31, 2012. Plaintiffs commenced this adversary proceeding by filing a complaint on June 21, 2012 to determine that Defendants' indebtedness to them as evidenced by the Judgment is excepted from discharge under 11 U.S.C. § 523(a)(2), (a)(4) and (a)(6).

This Court granted Plaintiffs' motion for summary judgment under 11 U.S.C. § 523(a)(2)(A) on grounds of issue preclusion on November 16, 2012. Defendants took an appeal to the United States Bankruptcy Appellate Panel for the Ninth Circuit (the "BAP"). The BAP vacated this Court's judgment and remanded the case on February 24, 2012. *Phan v. Nguyen (In re Phan and Nguyen)*, BAP No. CC-12-1621-KiTaKu (9th Cir. BAP, February 24, 2012) (not for publication). The BAP noted in its decision that "no findings address whether conversion may have been the basis for any judgment, based on Debtors' wrongful exercise and control of the net equity in the amount of $76,500 to which Plaintiffs

were entitled under the Settlement Agreement." *Phan v. Nguyen (In re Phan and Nguyen), supra,* at 11-12.

On remand, the Court entered an order on December 22, 2014 providing for a bifurcated trial of this case, with the first phase limited to the question of whether issue preclusion applies and the second phase dealing with all other matters in the case. As indicated earlier, the first phase trial was held on June 30, 2015.

## CONCLUSIONS OF LAW

### A. Issue Preclusion Standards.

The Court notes at the outset that the matter of issue preclusion comes before the Court at a trial as opposed to on a motion for summary judgment. In a motion for summary judgment, the Court must view all the evidence in the light most favorable to the nonmoving party. *Cnty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001). No such rule applies in the case of a trial.

Issue preclusion principles apply in discharge exception proceedings under 11 U.S.C. § 523(a) to preclude the re-litigation of state court findings to the dischargeability determination. *Grogan v. Garner*, 498 U.S. 279 (1991). Additionally, the Full Faith and Credit Act, 28 U.S.C. § 1738, requires this Court, as a matter of full faith and credit, to apply the relevant state's preclusion principles. *Gayden v. Nourbakhsh (In re Nourbakhsh)*, 67 F.3d 798, 800 (9th Cir. 2003); *Yin-Ching Houng v. Tatung Co., Inc. (In re Yin-Ching Houng)*, 499 B.R. 751, 760 (C.D. Cal. 2013). Here, because the Judgment is a California judgment, the Court is required to apply the California law of issue preclusion. *Cal-Micro, Inc. v. Cantrell (In re Cantrell)*, 329 F.3d 1119, 1123 (9th Cir. 2003).

California law bars the re-litigation of an issue if all five of the following requirements are met: (1) the issue sought to be precluded is identical to that decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the issue was necessarily decided in the prior proceeding; (4) the judgment in the prior proceeding is final and on the merits; and (5) the party against whom preclusion is sought is the same, or in privity with, the party to the prior proceeding. *Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240, 1245 (9th Cir. 2001). Additionally, if all of these requirements are met, the Court must decide whether the application of issue preclusion would "further the policy

interests underlying the doctrine." *Id.,* 250 F.3d at 1249 n. 11.

Plaintiffs have the burden of proving all the requisites for application of issue preclusion and "must introduce a record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action." *Kelly v. Okoye (In re Kelly)*, 182 B.R. 255, 258 (9th Cir. BAP 1995), *aff'd,* 100 F.3d 110 (9th Cir. 1996). *Kelly* indicates that any reasonable doubt as to what was decided by a prior judgment should be resolved against applying issue preclusion. This Court is unsure how or why the criminal justice standard of proof beyond a reasonable doubt came to be the standard for testing issue preclusion in a bankruptcy case but nevertheless will apply that standard here.[4]

Defendants conceded at trial that requirements (1), (4) and (5) are met in this case.[5] Accordingly, the Court's focus of attention is on requirements (2) and (3) and policy concerns regarding the application of issue preclusion in this case.

Although it might be supposed that a default judgment can never satisfy the "actually litigated" requirement, California gives issue preclusion effect to default judgments in certain circumstances. The rationale behind finding that default judgments can be preclusive is that defendants who are served with a summons and complaint but fail to respond are presumed to admit not all allegations in the complaint but rather all <u>well-pleaded</u> allegations in the complaint. *Kim v. Westmoore Partners, Inc.*, 201 Cal. App. 4th 267, 281-82 (4th Dist. 2011):

> "Substantively, '[t]he *judgment by default* is said to "confess" the material facts alleged by the plaintiff, i.e., the defendant's failure to answer has the same effect as an express admission of *the matters well pleaded in the complaint"* . . . And if the well-pleaded allegations of the complaint do not state any proper cause of action, the default judgment in plaintiff's favor cannot stand. . . In this case, a review of Kim's complaint reveals it does not set forth any valid cause of action. (italics in the original)

---

[4] The two cases cited by *Kelly* for the proposition that reasonable doubt about what was decided by a prior judgment should be resolved against finding issue preclusion do not support the proposition nor is there any explanation as to why the usual and customary preponderance of the evidence standard is displaced when dealing with issue preclusion.

[5] At trial, Defendants' counsel stated that the only remaining issue was the "necessarily decided" requirement. R.T. at 11, lines 21-22. However, by this the Court understood him to mean not that he was conceding that the "actually litigated" was met but instead that he understood and did not challenge the rule that the "actually litigated" requirement could be waived if the Court determined that fraud was necessarily determined in the Judgment.

Thus, if a plaintiff sets forth various facts in a complaint, and such facts fail to state a cause of action upon which relief can be granted, California will not give issue preclusive effect to such facts notwithstanding a default by a defendant. Moreover, the default judgment itself as to that cause of action, in the words of the California Court of Appeal in *Kim v. Westmoore Partners, Inc., supra,* "cannot stand."

**B. Application of the "Actually Litigated" Requirement.**

For a default judgment to satisfy the "actually litigated" requirement, the record in the prior proceeding must show an express finding upon the allegation for which preclusion is sought. However, "the express finding requirement can be waived if the court in the prior proceeding necessarily decided the issue. As a conceptual matter, if an issue was necessarily decided in a prior proceeding, it was actually litigated." *Harmon v. Kobrin (In re Harmon), supra,* 250 F.3d at 1248.

Here, there is no dispute that the Orange County Superior Court made no express findings as to the basis for rendering the Judgment.

**C. Application of the "Necessarily Decided" Requirement.**

Accordingly, this Court's focus now narrows to the question of whether the Orange County Superior Court <u>necessarily decided</u> that Defendants are liable to Plaintiffs based upon the first cause of action for fraud (or, as Plaintiffs label it, intentional misrepresentation). If the Orange County Superior Court necessarily decided that Defendants committed fraud under California law, then issue preclusion will apply and, because it is well established that fraud under California law has exactly the same elements as fraud under 11 U.S.C. § 523(a)(2)(A), the Judgment would be excepted from discharge. *Younie v. Gonya (In re Younie)*, 211 B.R. 367, 373-74 (9th Cir. BAP 1997). On the other hand, if it turns out that the Judgment is based on conversion rather than fraud, the Judgment would not be excepted from discharge based upon issue preclusion because a judgment for conversion does not, without more, establish that a debt arising out of that judgment is non-dischargeable under § 523(a)(6). *Peklar v. Ikerd (In re Peklar)*, 260 F.3d 1035, 1039 (9th Cir. 2001). If there is a reasonable doubt as to the basis on which the state court entered its judgment – because it cannot be determined on what basis the Orange County Superior Court entered its Judgment – issue preclusion will not apply.

Necessary determination is a somewhat elusive concept in the context of a default judgment. Here, the question would seem to be whether the Orange County Superior Court could have issued the Judgment without finding that Defendants had committed fraud. *Harmon v. Kobrin (In re Harmon)*, *supra,* 250 F.3d at 1248-49 ("However, in this case, the state court could have entered a default judgment against Harmon without finding that he had committed fraud. Thus, the issue was not necessarily decided by the prior proceeding.") If the Orange County Superior Court could have issued the Judgment without finding that Defendants committed fraud, then issue preclusion does not apply. Conversely, if the Orange County Superior Court could not have issued the Judgment without a finding of fraud, issue preclusion applies.

These rules require this Court to inquire into (1) what the Judgment actually provides, and (2) the viability of the various causes of action.

Certain causes of action can be quickly disposed of. The Judgment of Default does not set forth any declaratory judgment nor impress any property with an equitable lien nor establish or find any kind of constructive trust. The Court does not understand Defendants to dispute these points. Therefore, the Judgment could not have been based on these causes of action.

The Judgment quiets title in favor of Plaintiffs. Plaintiffs did not request damages in their quiet title cause of action nor in the Request for Judgment, and there is no reason to believe that the damages actually awarded in the Judgment are awarded in respect of the quiet title count of the First Amended Complaint. First Amended Complaint at pages 11-12 of 15. In any event, Defendants have not argued that the damages awarded were awarded in respect of the quiet title count. Defendants Tony Lee Phan and Jenny Nguyen's Trial Brief, Docket No. 57, filed June 12, 2015 ("Defendants' Trial Brief") at 6, lines 8 – 14.

As pointed out earlier, the First Amended Complaint does not in fact plead negligent misrepresentation – what is held out to be negligent misrepresentation is actually pleaded as intentional misrepresentation. If the Orange County Superior Court granted judgment based on the second cause of action, it necessarily found fraud because that is all the second cause of action pleads.

**1.  Could the Judgment-Awarded Damages Have Been Based on Conversion?**

This leaves the causes of action for fraud and conversion.  When the Court inquired of Defendant's counsel at trial whether he knew of any evidence that would support a finding that the Judgment is based on conversion, Defendant's counsel conceded that he knew of no such evidence.  R.T. at 48, lines 11-18.  Nor has the Court been able to find any evidence that the Judgment is based to any extent on conversion.  To phrase it differently, the proposition that the Judgment is based on conversion is totally unsupported speculation.

Defendants' argument that the Judgment could have been based on conversion is fatally flawed <u>because the First Amended Complaint fails to state a cause of action for conversion</u>.  This is the gist of the entire matter.  The cause of action for conversion is based upon the allegation that Defendants converted Plaintiffs' interest in the Property.  The Property is unquestionably real property.  Cal. Civ. Code § 658 (2015). Plaintiffs' 50 percent interest in the Property is likewise real property because it is a tenancy in common.  Cal. Civ. Code § 686 (2015); B. Witkin, 12 Summary of California Law, 10th Edition, Real Property § 39(a) (interests created in favor of several persons in their own right is presumed to be a tenancy in common).  *See also Co. Litt.* § 190b (stating the rule at common law).  Under well-established California law, the tort of conversion requires and is limited to a "wrongful exercise of dominion over <u>personal</u> property of another".  B. Witkin, 5 Summary of California Law, 10th Edition, Torts § 699; *Fremont Indem. Co. v. Fremont General Corp.*, 148 Cal. App.4th 97, 119 (2007); *Salma v. Capon*, 161 Cal. App.4th 1275, 1295 (2007) (tort of conversion applies to personal property, not real property) (underscoring added).  A wrongful exercise of dominion over <u>real</u> property is not conversion under California law.  The First Amended Complaint alleges a conversion of real property, not personal property.  Accordingly, the third cause of action in Plaintiffs' First Amended Complaint fails to state a cause of action for conversion upon which relief could be granted, and the Orange County Superior Court could not possibly have based its judgment on conversion without grossly ignoring and misapplying law, which it cannot be presumed to have done.

Because the conversion count fails to state a claim upon which relief can be granted, none of the allegations underlying the conversion count are deemed to be true as a result of the Defendants' default.  *Kim v. Westmoore Partners, Inc.*, *supra,* 201 Cal. App. 4th at 281-82 (4th Dist. 2011).  Absent

these deemed admissions, the Orange County Superior Court would have had no basis for determining in the Judgment that conversion occurred. Applying the rule of the *Kim* case, any default judgment for conversion "cannot stand." Consequently, conversion cannot be the basis for any part of the Judgment which is, of course, a default judgment.

Defendants seek to escape this result with a variety of arguments that are ultimately unpersuasive and lacking in merit. First, they argue that the second mortgage is personal property, and that the First Amended Complaint can be interpreted as pleading conversion of the mortgage. Although the promissory note secured by the second mortgage is certainly personal property in the hands of lender Wells Fargo, it is <u>a liability</u> insofar as Plaintiffs and Defendants are concerned. A liability cannot be converted because it's not property at all – it's an obligation, a contractual duty in most cases, not a contractual right or other right. If obligations were property, hopelessly insolvent debtors would be rich.

Second, Defendants argue that Plaintiffs are judicially estopped from contending that the conversion count fails to state a cause of action when, by filing the First Amended Complaint, they asserted expressly or impliedly that the conversion count did in fact state a good claim for relief. The doctrine of judicial estoppel precludes a party from gaining an advantage by taking one position and then seeking a second advantage by taking an incompatible position. *Whaley v. Belleque*, 520 F.3d 997, 1002 (9th Cir. 2008). In determining whether to invoke judicial estoppel, courts consider the following factors: (1) whether the party's new assertion is "clearly inconsistent" with its earlier position; (2) whether the party was successful in persuading the court to follow its first position; and (3) whether the party asserting inconsistent positions would derive an unfair advantage or impose an unfair detriment if not estopped. *New Hampshire v. Maine,* 532 U.S. 742, 750, 121 S.Ct. 1808 (2001). The United States Court of Appeals for the Ninth Circuit restricts application of judicial estoppel to cases where the court relied upon or accepted the party's previous inconsistent position. *Hamilton v. State Farm Fire & Cas. Co.,* 270 F.3d 778, 783 (9th Cir. 2001). Judicial estoppel is an affirmative defense. *Reed v. City of Arlington*, 650 F.3d 571, 576 (5th Cir. 2011) (en banc). As with all affirmative defenses, the party or parties asserting an affirmative defense – here, Defendants – have the burden of proof. *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1170 (9th Cir. 2012).

Defendants' judicial estoppel argument fails for a number of reasons.  <u>First</u> and foremost, it misstates the relevant proposition, the one which Plaintiffs now advance.  The relevant proposition, argued by Plaintiffs at trial, is that the Orange County Superior Court did not decide the case based on conversion.  Taking a position, as Plaintiffs did in the First Amended Complaint and the Request for Judgment, that Plaintiffs were entitled to judgment based on conversion is completely separate and different from the proposition that the Orange County Superior Court's Judgment did not decide the case based on conversion.  Defendants have not made a showing at trial or in the Defendants' Trial Brief that Plaintiffs previously took the position in litigation that the Orange County Superior Court decided the case based on conversion.  Because judicial estoppel is an affirmative defense, Defendants have the burden of proof on this issue, and they have failed to meet it.  <u>Second</u>, Defendants have not shown that Plaintiffs have persuaded <u>any</u> court that the Judgment was based on conversion.  <u>Finally</u>, Defendants have failed to show that any court relied upon the proposition that the Judgment was not based on conversion.

Third, Defendants contend that Plaintiffs have judicially admitted the conversion allegations in the complaint and may not now revoke this admission.  Again, this misstates the relevant proposition.  Neither the First Amended Complaint nor any state court pleading filed by Plaintiffs including the Request for Judgment takes a position as to the basis for the subsequent Judgment.  The doctrine of judicial admission is inapposite here.

Although the Defendants do not squarely make the argument, the Court has considered whether the conversion count could have been the basis for the Judgment on the theory that Defendants converted net equity in the amount of $76,500 to which Plaintiffs were entitled under the settlement of the First State Court Action.  The Court rejects this analysis for two independent reasons.  First, the First Amended Complaint does not argue for conversion of net equity in the Property nor for any right arising under the settlement, it argues for conversion of Plaintiffs' interest in the Property itself.  Second, equity in property is not a cognizable property interest.  Cal. Civ. Code § 700 (2015).[6]  The relevant property

---

[6] Section 700 provides that a mere possibility is not an interest. Equity in property is a mere possibility: it is nothing more and nothing less than the amount of money an owner would realize from property if it were sold at a particular point in time after the payment of costs of sale, satisfaction of liens against the property, etc.. Because the equity is not realized until the sale occurs, it is a mere possibility.

interest is the property itself, not "equity in property." And, as established earlier, the Property is real property, not personal property, and cannot be the subject of a conversion action.

### 2. Could the Judgment-Awarded Damages Have Been Based on Fraud?

The Court next turns to the fraud count itself and will inquire into the reasons, if any, for reaching a conclusion that the Judgment is based on fraud. The fraud cause of action, unlike the conversion cause of action, is well pleaded in the First Amended Complaint. It would not have been subject to a motion to dismiss for failure to state a claim upon which relief can be granted (or, in California state court, a demurrer) because each of the elements of a fraud cause of action in California is satisfactorily pleaded. Plaintiffs allege in the First Amended Complaint that "Defendants Tony Lee Phan and Jenny Nguyen deliberately failed to disclose the existence of that second mortgage to Plaintiffs. Due to that intentional omission, Defendants Phan and Nguyen continuously represented that only one mortgage existed as to the Property. This representation related to a material fact and continued from about December 3, 2007 to April 20, 2009 . . . the Settlement Agreement . . . was formed prior to the April 20, 2009 discovery of the false representation." First Amended Complaint at page 5 of 15, lines 10-15. This clearly satisfies the requirement for correctly pleading the first element of a cause of action for fraud, namely, misrepresentation, fraudulent omission or deceptive conduct by the debtor.

Without belaboring the point, which would require several more pages in an already long Memorandum Decision, it is clear that each of the other elements of a fraud cause of action is satisfactorily pleaded by Plaintiffs. Under *Kim* and other California cases, because the fraud cause of action is well pleaded and Defendants defaulted, "the defendant's failure to answer has the same effect as an express admission of the *matters well pleaded in the complaint." Kim v. Westmoore Partners, Inc.*, *supra,* 201 Cal. App. 4th at 281. Consequently, Defendants' admitted all of Plaintiffs' allegations in the fraud count of the First Amended Complaint and therefore the Orange County Superior Court would have been justified in granting judgment based on this cause of action.

The Orange County Superior Court would have been on solid ground if it awarded the damages in the Judgment based on fraud, but did it necessarily do so? The answer is yes, because all

other causes of action have been ruled out as the preceding analysis indicates. By process of elimination, the only cause of action on which the Orange County Superior Court could have awarded damages was fraud.[7] No reasonable doubt exists as to the basis on which the damages in the Judgment could have been rendered other than fraud because each of the other causes of action has been ruled out.

A further consideration is that the damages awarded by the Orange County Superior Court are consistent with a fraud determination. The unknown and concealed second mortgage, when added to the existing first mortgage, rendered the Property "underwater" (i.e., the Property's fair market value was less than the amount of the secured debt encumbering it) or, in any event, very close to being underwater. In such a situation, Plaintiffs could plausibly contend that had they known about the second mortgage, they would have ceased throwing good money after bad and would not have continued to pay the entirety of the payments due under the first mortgage and the entirety of the homeowners' association assessments. The attorneys' fees award, scaled back from $43,000 to $3,772.38 may have related to fees incurred in dealing with the homeowners' association and Wells Fargo Bank. All of these payments were arguably out-of-pocket expenses that would not have been incurred but for the fraud and were proximately caused by the fraud.

In summary, there is <u>some</u> evidence that the damages awarded in the Judgment were based on fraud. There is <u>no</u> evidence that they were based on conversion or any of the other causes of actions stated in the First Amended Complaint. Thus, Plaintiffs have proven that the Orange County Superior Court necessarily decided that Defendants committed fraud under California law and that five-part test for issue preclusion has been met. Based upon its conclusion that fraud was necessarily determined as to the monetary damages awarded in the Judgment, the Court finds no reasonable doubt exists as to what was decided by the Judgment – because no other cause of action in the First Amended Complaint would support such an award for the reasons already explained.

---

[7] For a literary analog to this type of reasoning, *see The Sign of the Four*, Sir Arthur Conan Doyle, chapter 6: "You will not apply my precept," [Holmes] said, shaking his head. "How often have I said to you that when you have eliminated the impossible, whatever remains, however improbable, must be the truth?"

**D. Policy Interests Underlying Issue Preclusion.**

The Court next considers whether the application of issue preclusion would "further the policy interests underlying the doctrine." *Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240, 1249 n.11 (9th Cir. 2001).

At its heart, issue preclusion is a doctrine of repose that permits a court to decide conclusively a question properly before it. *Greene v. United States,* 79 F.3d 1348, 1352 (2d Cir. 1996), *cert. denied*, 519 U.S. 1028, 117 S.Ct. 582 (1996). The doctrine strikes a balance between fairness and finality, with the nod going to finality assuming the five-part test for issue preclusion is met. If the five-part test is met, a protest that an underlying judgment should be subject to re-litigation because the ultimate result was unfair – perhaps because the losing party was poorly represented (or not represented at all) and all the important facts did not come before the court – will not be heard.

In a bankruptcy context, where financially-beleaguered debtors often lack the ability to mount a defense to prepetition litigation, courts should be cautious about applying issue preclusion, especially where the underlying cause of action rests on subjective factors, such as whether a debtor had no intention of repaying a debt at the time he or she incurred it.

This case, however, presents no particular conflict between fairness and finality. At the summary judgment and trial phases of this case the Court has not heard Defendants claim that they disclosed the secret second mortgage to Plaintiffs during the settlement negotiations attendant to the First State Court Action or Plaintiffs knew about the second mortgage at this time. Moreover, even if Defendants had made such a claim, one would have to ask whether it is logical to suppose that Plaintiffs would enter into a settlement in open court with Defendants when they knew or should have known in advance that Defendants would not be able to perform under such agreement – because the placement of the second mortgage rendered the Property "underwater" or nearly so, making the very refinancing contemplated by the settlement agreement impossible. The clear implication of all this is that, in actual fact, Defendants intentionally concealed the second mortgage's existence from Plaintiffs and thereby defrauded Plaintiffs and also, in all likelihood, the Orange County Superior Court that approved the settlement agreement based upon representations made by the parties in open court. Fairness and finality are solidly allied in this case; they are not in opposition to one another.

For these reasons it is quite clear that policy considerations underlying the doctrine of issue preclusion would be furthered by applying the doctrine here.

## CONCLUSION

Based upon the foregoing, Defendants' liability to Plaintiffs under the Judgment is excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A). IT IS ORDERED that Plaintiffs shall lodge a form of judgment within fourteen (14) days of the date of entry of this Memorandum Decision and Order. In view of this disposition, there is no need for a second phase of the trial.

###

Date: July 10, 2015

Mark S. Wallace
United States Bankruptcy Judge